## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE GUARANTEE COMPANY OF            *
NORTH AMERICA USA
One Towne Square, Suite 1470        *
Southfield, Michigan 48076
                                    *       Case No. 1:19-cv-01601

            *Plaintiff*,            *

v.                                  *

LAKOTA CONTRACTING INC. DBA         *
NCF INTERIORS
1220 12th Street, SE Suite G-25     *
Washington, DC 20003
                                    *
*Serve on:* CT Corporation System UNK, RA
            1015 15th St NW         *
            Suite 1000
            Washington, DC 20005    *

And                                 *

NATIONAL COMMERCIAL                 *
FLOORING, INC.
7760 Legere Court                   *
McLean, VA 22102
                                    *
*Serve on:* William H. Casterline, Jr., RA
            4020 University Drive   *
            Suite 300
            Fairfax, VA 22030       *

And                                 *

JRH AVION PARK, LLC                 *
450 S. Prickett St., Ste. B
Alexandria, VA 22304                *

*Serve on:* William H. Casterline, Jr., RA   *
            4020 University Drive
            Suite 300               *
            Fairfax, VA 22030
And                                 *

1

REZA AMIRGHAFFARI                          *
7760 Legere Ct.
Mc Lean, VA 22102                          *

AND,                                       *

ROYA AMIRGHAFFARI                          *
900 3rd St. SE
Washington, DC 20003                       *

                    *Defendants*.          *

*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

Plaintiff, The Guarantee Company of North America USA ("GCNA" or "Surety"), by its

undersigned attorneys and pursuant to the Federal Rules of Civil Procedure, files this Complaint

against and sues the Defendants, Lakota Contracting, Inc. dba NCF Interiors ("Lakota"), National

Commercial Flooring, Inc. ("NCF"), JRH Avion Park, LLC ("JRH Avion"), Reza Amirghaffari,

and Roya Amirghaffari (Lakota, NCF, JRH Avion, Reza Amirghaffari and Roya Amirghaffari are

collectively referred to herein as the "Indemnitors" or "Defendants"), and states as follows:

### Parties, Jurisdiction and Venue

1.      GCNA is a surety, incorporated in the State of Michigan, with its principal place of

business in Michigan.  GCNA is authorized to transact business, and does transact business as a

surety, in the District of Columbia.

2.      Lakota is a corporation, incorporated in the Commonwealth of Virginia, with its

principal office in Washington, D.C.  Lakota's status with the District of Columbia has been

revoked.

3.      NCF is a corporation, incorporated in the Commonwealth of Virginia, with its

principal place of business in Fairfax, Virginia.  NCF's status with the District of Columbia has

been revoked.

4.      Reza Amirghaffari is an individual who resides in the Commonwealth of Virginia.

5.      Roya Amirghaffari is an individual who resides in the Commonwealth of Virginia.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in Washington, DC.

**Facts**

**A.   Lakota – a Construction Contractor – and the Surety Bonds**

8.      Lakota is an interior finish and flooring construction company that transacts business in Washington, DC, Virginia and Maryland.

9.      Lakota performs as a subcontractor to various general contractors and construction managers on various construction projects.

10.     As a condition of some of its contracts or subcontracts, Lakota is required to provide surety bonds for the benefit of the business with which it contracts.

11.     At the Indemnitors' request, GCNA, as surety, issued payment and performance bonds ("Bonds") on behalf of Lakota for the construction contracts that it was to perform, including, but not limited to, for the following projects (collectively, the "Bonded Projects"):

| Obligee | Project | Bond No. | Penal Sum |
|---------|---------|----------|-----------|
| Lendlease (US) Construction, Inc. | 1210 Van Street, SE, Washington, DC | 30154834 | $1,994,000.00 (Performance) |
| Lendlease (US) Construction, Inc. | 1210 Van Street, SE, Washington, DC | 30154834 | $1,994,000.00 (Payment) |
| Lendlease (US) Construction, Inc. | Ripley East | 30154818 | $813,050.00 (Performance) |

| | | | |
|---|---|---|---|
| Lendlease (US) Construction, Inc. | Ripley East | 30154818 | $813,050.00 (Payment) |
| Lendlease (US) Construction, Inc. | Ripley East | 30154819 | $1,136,250.00 (Performance) |
| Lendlease (US) Construction, Inc. | Ripley East | 30154819 | $1,136,250.00 (Payment) |
| Hoar Construction, LLC | Tysons Central - Building F | 30154835 | $2,250,000.00 (Performance) |
| Hoar Construction, LLC | Tysons Central - Building F | 30154835 | $2,250,000.00 (Payment) |
| Clark Construction Group, LLC | Suburban Hospital Campus Enhancement Project Phase 2 | 30154820 | $1,172,700.00 (Performance) |
| Clark Construction Group, LLC | Suburban Hospital Campus Enhancement Project Phase 2 | 30154820 | $1,172,700.00 (Payment) |

**B. General Indemnity Agreement in Favor of GCNA**

12.     In partial consideration for GCNA agreeing to issue any Bonds on behalf of Lakota, the Indemnitors executed a General Agreement of Indemnity in favor of GCNA (the "Indemnity Agreement").  A true and accurate copy of the Indemnity Agreement is attached hereto as Exhibit A.

13.     The Indemnity Agreement provides, among other things, that the Indemnitors will indemnify GCNA and "agree to pay to Surety upon demand" the following:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs, attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Indemnitors to make arrangements for Surety's legal representation), in-house fees, consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of:
   a. Surety having executed, provided or procured any Bond;
   b. any Default under this Agreement by any of the Indemnitors;
   c. Surety enforcing any of the covenants or conditions of this Agreement;
   d. Surety conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any Bonds; and/or

4

     e.   Surety prosecuting or defending any action or claim in connection with any Bonds executed provided or procured on behalf of Principal or Indemnitors, whether Surety at its sole option elects to employ its own counsel, or permits or requires Indemnitors to make arrangements for Surety's legal representation. In addition the Indemnitors agree to pay Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement.

(Exhibit A, Indemnity Agreement at p. 2, **"INDEMNITY TO SURETY"** ¶ 1).

    14.    The Indemnity Agreement also requires the Indemnitors to provide collateral to GCNA upon demand as follows:

    2.   Any amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Surety, or (b) such amount as the Surety, in its sole judgment, shall deem is sufficient to protect it from loss. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond. Surety shall have no obligation to invest or provide a return on the funds deposited. The Indemnitors acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Indemnitors confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.

(*Id.* at ¶ 2).

    15.    The Indemnity Agreement further provides the following:

    5.   The Indemnitors will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Indemnitors will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligations.

(*Id.* at p. 4, **"GENERAL PROVISIONS,"** ¶ 5).

    16.    Per the terms of the Indemnity Agreement, until such time as GCNA is discharged from liability without loss under its Bonds, the Indemnitors are required to provide GCNA with

"free access at reasonable times to their [the Indemnitors'] books, records and accounts . . . for the purpose of examining, copying or reproducing them." (*Id.* at ¶ 4).

17.    With respect to claims that are made against GCNA's Bonds, the Indemnity Agreement provides broad discretion and the exclusive right to GCNA to compromise or pay any claim, stating as follows:

> **CLAIMS AGAINST THE SURETY:** With respect to claims against Surety, Indemnitors agree that:
>
> 1.  Surety shall have the exclusive right for itself and the Indemnitors to determine in its sole and absolute discretion whether any claim or suit upon any bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.
> 2.  Surety may incur such expenses, including attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has issued any Bond.
> 3.  In the event of any payment of any kind by the Surety, the Indemnitors further agree that the liability of the Indemnitors shall extend to and include, and the Surety shall be entitled to charge and recover for, any and all disbursements made by it in good faith under the belief that:
>     a.  any principal or Indemnitor is or has been in default under or pursuant to this Agreement;
>     b.  the Surety was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or
>     c.  such payments were or are necessary or expedient, in the Surety's sole and absolute discretion, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed.
> 4.  An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety in any claim or suit by Surety against Indemnitors.

(*Id.* at p. 2, **"CLAIMS AGAINST SURETY" ¶¶** 1-4).

18.    Under the Indemnity Agreement, an "Event of Default" of the principal includes, among other things, "the declaration by any Bond Obligee or Project Owner that any Principal is in default under any Contract"; "[a]ny abandonment, forfeiture, breach, failure, refusal or inability,

whether actual or alleged, to perform any Contract, or any obligation contained therein"; the failure "to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract"; and the principal's "[b]reaches, fail[ure]s to perform, or comply with, any provisions of this [Indemnity] Agreement." (*Id.* at p. 1-2 at **"EVENT OF DEFAULT"**).

19.     The Indemnity Agreement states that it "is to be liberally construed so as to protect, exonerate and indemnify the Surety." (*Id.* at p. 5 **"GENERAL PROVISIONS," ¶** 11).

### C. Obligee's Notices of Default to Lakota, and the Indemnitors' Material Breaches of the Indemnity Agreement

20.      On or about February 26, 2018, Lendlease (US) Construction, Inc. ("Lendlease") contracted with Lakota, and Lakota agreed to provide certain materials and work for the construction project generally known as the 1210 Van Street, 1210 Van Street, SE, Washington, DC 255181 project (the "Van Street Project").

21.     On or about April 26, 2019, Lendlease notified Lakota that it was in default of its obligations under its Subcontract for the Van Street Project and, at the same time, made demand on GCNA pursuant to its Performance Bond.

22.     On or about April 30, 2019, Lendlease terminated Lakota's Subcontract for the Van Street Project and again made demand on GCNA pursuant to the Performance Bond.

23.     On or about May 30, 2019, GCNA issued a check payable to Lendlease in the amount of $342,800.00 in order to fund the excess costs of completing Lakota's subcontract for the Van Street project.

24.     On or about May 16, 2019, Clark Construction Group, LLC ("Clark Construction") issued a "Three Day Notice" to Lakota asserting that Lakota was in breach of its Subcontract with Clark Construction with respect to the Suburban Hospital Campus Enhancement Project Phase 2

project (the "Suburban Hospital Project") and demanded that Lakota cure its breaches of the Subcontract.

25.     On or about May 20, 2019, Clark Construction informed Lakota that Lakota had failed to meet certain requirements of Clark Construction's May 16, 2019 "Three Day Notice" to Lakota, and, thus, was still in breach of that Subcontract.

26.     On or about May 24, 2019, Lendlease notified Lakota that it was in default of its obligations under its Subcontract(s) for the Ripley East Project and, at the same time, made demand on GCNA pursuant to its Performance Bond.

27.     Lendlease's declarations of default on the Van Street Project and Ripley East Project; Lendlease's termination of Lakota's subcontract on the Van Street Project; GCNA's claim payment of $342,800.00 to Lendlease; and Clark Construction's Three Day Notice to Lakota constitute material breaches of, and Events of Default under, the Indemnity Agreement.

**D.  GCNA's Demand to be Exonerated and Held Harmless and for Collateral**

28.     On April 30, 2019, GCNA, through counsel, wrote to Lakota and the other Indemnitors and demanded that they "discharge GCNA from any and all liability it may have by reason of having issued the . . . [bonds for the Van Street Project], or any other Bonds, or alternatively, deposit collateral security with GCNA in the amount of $1,000,000.00, within ten (10) days of the date" of the demand.

29.     The Indemnitors have failed and refused to comply with GCNA's demand, including GCNA's demand for collateral.

30.     The Indemnitors materially breached the Indemnity Agreement by failing to indemnify GCNA, failing to discharge GCNA from all liability under its Bonds and failing to deposit collateral security with GCNA, among other things.

31.     These breaches of the Indemnity Agreement also constitute "Events of Default"
under the Indemnity Agreement.

## COUNT I
### (Breach of Contract – Contractual Indemnity)

32.     GCNA incorporates by reference the preceding paragraphs of this Complaint as if
fully stated herein.

33.     Pursuant to the terms of the Indemnity Agreement, the Indemnitors agreed, among
other things, jointly, severally and individually, to indemnify, hold harmless and reimburse GCNA
for all losses, costs and expenses, including, but not limited to, attorneys' and consultants' fees
incurred by GCNA in any way related to GCNA's issuance of the Bonds.

34.     Pursuant to the terms of the Indemnity Agreement, the Indemnitors further agreed,
upon demand by GCNA, to pay amounts to GCNA sufficient to discharge claims against GCNA
and/or the Bonds, as well as attorneys' and consultants' fees incurred by GCNA.

35.     The Indemnitors have failed and/or refused to honor their obligations under the
Indemnity Agreement, despite demand, constituting material breaches of the Indemnity
Agreement and resulting in damages to GCNA.

36.     Upon information and belief, GCNA will continue to incur additional losses, costs
and expenses as a result of having issued the Bonds on behalf of Lakota, including attorney's fees
and costs in enforcing the terms and conditions of the Indemnity Agreement, all of which are
recoverable under the Indemnity Agreement.

WHEREFORE, GCNA demands that judgment be entered in its favor and against the
Defendants, Lakota Contracting, Inc. dba NCF Interiors, National Commercial Flooring, Inc., JRH
Avion Park, LLC, Reza Amirghaffari and Roya Amirghaffari, jointly and severally, in the amount

of at least $342,800.00, or such other amount as is demonstrated by GCNA, plus interest, costs and attorneys' fees.

## COUNT II
### (Breach of Contract – Specific Performance/Deposit of Collateral)

37.     GCNA incorporates by reference the preceding paragraphs of this Complaint as if fully stated herein.

38.     Pursuant to the terms of the Indemnity Agreement, the Indemnitors agreed to deposit collateral with the Surety upon the Surety's demand.

39.     The Indemnitors acknowledged in the Indemnity Agreement that the failure to pay GCNA, immediately upon demand, the sums demanded by GCNA pursuant to the Indemnity Agreement would cause irreparable harm to GCNA for which GCNA has no adequate remedy at law.

40.     The Indemnitors also agreed in the Indemnity Agreement that GCNA is entitled, at its election, to immediate injunctive relief for specific performance of the collateral deposition provisions of the Indemnity Agreement.

41.     Despite GCNA's demand for collateral on April 30, 2019, the Indemnitors have failed and refused to deposit collateral to the Surety as required by the terms of the Indemnity Agreement.

WHEREFORE, GCNA respectfully requests that this Court enter an Order requiring the Defendants, Lakota Contracting, Inc. dba NCF Interiors, National Commercial Flooring, Inc., JRH Avion Park, LLC, Reza Amirghaffari and Roya Amirghaffari, jointly and severally, to deposit collateral security with GCNA in the amount of $1,000,000 or as otherwise demanded by GCNA, and award to GCNA such other and further relief as is just and equitable.

## COUNT III
### (*Quia Timet* – Defendants Indemnitors)

42.     GCNA incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

43.     Pursuant to the equitable doctrine of *quia timet*, the Indemnitors are required to hold GCNA harmless from and against all loss, cost and expense incurred by GCNA as a result of having provided the Bonds.

44.     Pursuant to the equitable doctrine of *quia timet*, the Indemnitors are required to post collateral in favor of GCNA to secure and exonerate GCNA from and against all claims, losses, costs and expenses that they have incurred or have been exposed to, or that GCNA fears may arise in the future, as a consequence of the issuance of the Bonds.

45.     Despite GCNA's prior demand, the Indemnitors have failed to hold GCNA harmless and/or to secure GCNA against loss consistent with the equitable doctrine of *quia timet*.

46.     As set forth hereinabove, and as agreed by the Indemnitors, GCNA has no adequate remedy at law and have suffered irreparable harm in connection with the Indemnitors' failure to abide by the terms of the Indemnity Agreement, or otherwise to hold GCNA harmless as required by law.

WHEREFORE, GCNA respectfully requests that this Court:

A.     Enter an Order in favor of the GCNA and against the Indemnitors, jointly and severally, in an amount of $1,000,000 or such other amount demonstrated by GCNA, as sufficient to hold GCNA harmless and secure it from current and anticipated future loss, plus interest, costs and attorneys' fees;

B.     Enter an Order in favor of the GCNA and against the Indemnitors, jointly and severally, obligating the Indemnitors to hold harmless, indemnify and reimburse GCNA

for any and all losses, costs and expenses, plus interest, that GCNA has sustained or will be exposed to in the future in connection with the issuance of the Bond;

C.      Issue a temporary restraining order, preliminary injunction and/or permanent injunction enjoining and restraining the Indemnitors (and their agents, servants, employees and all persons acting under, in concert with, or for them) from selling, transferring, disposing of, pledging, encumbering or licensing their assets and property, whether real or personal, unless and until the Indemnitors have reimbursed and indemnified GCNA from its current losses, and posted sufficient collateral to secure GCNA and hold them harmless from and against all anticipated, future loss, cost and expense, plus interest, as described above;

F.      Enter a judgment, for specific performance and/or *quia timet*, against the Indemnitors, to immediately post collateral security with GCNA sufficient to protect GCNA from all loss, cost and expenses, plus interest, recoverable pursuant to the terms of the Indemnity Agreements or otherwise;

G.      Enter a judgment in favor of GCNA for all of their current losses, and for attorneys' and consultants' fees and costs incurred in connection with this action, plus interest; and

H.      Award such further relief to GCNA as may be necessary or just given the circumstances.

### COUNT IV
### (Breach of Contract – Specific Performance/Access to Books and Records)

47.     GCNA incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

48.     The Indemnity Agreement requires the Indemnitors to provide GCNA with access to their books, records and accounts.

12

49.     On May 17, 2019, GCNA demanded that the Indemnitors provide GCNA with access to their books, records and accounts.

50.     On May 24, 2019, GCNA again demanded that the Indemnitors provide GCNA with access to their books, records and accounts.

51.     The Indemnitors have failed and refused to provide GCNA with access to their books, records and accounts as required by the Indemnity Agreement.

52.     Indemnitors have materially breached the Indemnity Agreement.

WHEREFORE, GCNA respectfully requests that this Court enter an Order requiring the Defendants, Lakota Contracting, Inc. dba NCF Interiors, National Commercial Flooring, Inc., JRH Avion Park, LLC, Reza Amirghaffari and Roya Amirghaffari, jointly and severally, to provide GCNA with access to their books, records and accounts as required by the terms and provisions of the Indemnity Agreement, and for such other and further relief in favor of GCNA as is just and equitable.

Respectfully submitted,

*/s/ Eric G. Korphage*
Patrick M. Pike, Bar No. M04750
Pike@pikegilliss.com
Eric G. Korphage, Bar No. 483144
EKorphage@pikegilliss.com
Pike & Gilliss, LLC
600 Washington Avenue, Suite 303
Towson, Maryland 21204
(443) 761-6500
(443) 761-6519 (fax)
*Attorneys for The Guarantee Company of*
*North America USA*