UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUARANTEE COMPANY OF NORTH AMERICA USA,<br><br>    *Plaintiff*,<br><br>v.<br><br>LAKOTA CONTRACTING INC. et al.,<br><br>    *Defendants*. | Civil Action No. 19-1601 (TJK) |

**MEMORANDUM**

After the Court entered a partial default judgment for Plaintiff, Plaintiff requested the opportunity to prove its damages. Plaintiff then submitted evidence, and only one defendant responded. The Court will enter judgment for Plaintiff against Defendants, jointly and severally, in the amount Plaintiff requests and the evidence supports: $3,554,323.00.

**I.    Background**

    **A.    Procedural History**

The Court's prior opinion explains this case's procedural history in more detail. *See* ECF No. 61 at 1–5. In short, Plaintiff's operative complaint asserts that Defendants breached an agreement to indemnify Plaintiff for bonds that Plaintiff issued and paid on Defendants' behalf. *See generally* ECF No. 48. Defendants answered that complaint late and repeatedly blew discovery deadlines. *See* ECF No. 61 at 2–4. When Plaintiff moved for sanctions, Defendants failed to respond to that motion. *Id.* at 4–5. Ultimately, the Court granted that motion and, as sanctions, entered a default judgment against all Defendants on Count I of the operative complaint and ordered Defendants to pay Plaintiff's reasonable expenses in renewing its motion for sanctions. *See* ECF No. 60.

Plaintiff then requested a chance "to submit documentary evidence . . . in support of a request for monetary damages" on Count I of its operative complaint. ECF No. 63 at 2. The Court agreed and set a schedule for Plaintiff to provide evidence and for Defendants to respond if they wished. *See* Min. Order of June 24, 2021. Plaintiff timely submitted evidence. *See* ECF Nos. 64–65. One defendant, Reza Amirghaffari, responded pro se by letter to the Court. *See* ECF No. 68-1 at 2.[1] Plaintiff responded with more evidence. *See* ECF Nos. 68, 68-2, 68-3.

**B.    The Record**

Plaintiff claims $3,554,323.00 in damages jointly and severally against Defendants. ECF No. 64 at 1, 5. Its legal basis for that claim is an indemnity agreement between the parties. *See id.* at 3–4. In support of its claim, it submitted affidavits by Sara Corbello, a surety claims examiner with Plaintiff's parent company, ECF No. 64-1 at 1–5; ECF No. 68-3 at 2–3, and Jeffrey Jubera, Plaintiff's vice president of claims and general counsel, ECF No. 64-1 at 7–14; ECF No. 64-2. It also submitted a list of the payments it made on bonds issued on Defendants' behalf, ECF No. 64-1 at 16–17, checks and wire transfers it used to make those payments, *id.* at 19–60, and a memorandum elaborating on how it calculated the total amount due, ECF No. 65.

Four of the five defendants did not respond to those filings. Reza Amirghaffari responded with three "[o]bjections." ECF No. 68-1 at 2. First, he argues that Plaintiff fails to explain how the payment amounts "were determined" or to prove that the amounts "were actually owed." *Id.* Second, he says Plaintiff has not shown that it accounted for "known balances owed to [Defendant] Lakota Contracting." *Id.* Third, he says Plaintiff has not provided "detailed invoices" showing what it paid its attorneys. *Id.*

---

[1] This district's local rules do not permit letter filings. *See* LCvR 5.1(a), (d).

2

## II.     Legal Standard

A "default establishes a defendant's liability," but "the Court makes an independent determination of the sum to be awarded in the judgment unless the amount of damages is certain." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008).  That determination requires the plaintiff to "prove its entitlement to the requested damages." *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002).  It may do so by "detailed affidavits or other documentary evidence." *Reyes v. Kimuell*, 270 F. Supp. 3d 30, 34 (D.D.C. 2017).  The movant "is entitled to all reasonable inferences from the evidence offered." *Al-Quraan v. 4115 8th St. NW, LLC*, 123 F. Supp. 3d 1, 1 (D.D.C. 2015).

The indemnification agreement here provides for payment to Plaintiff for "any and all disbursements made by it in good faith."  ECF No. 48 at 26.  It also provides that an "itemized statement of loss and expense . . . sworn to by an officer of [Plaintiff]" is "prima facie evidence of the fact and extent of [Defendant's] liability." *Id.*  Provisions like those are "valid and enforceable under District of Columbia law." *Selective Ins. Co. of Am. v. Moseley*, No. 19-CV-1054 (APM), 2021 WL 3268380, at *6 (D.D.C. July 30, 2021).[2]  But there is no "controlling District of Columbia authority" on what "constitutes good faith" by a surety. *See id.* at *9.  Some jurisdictions hold that a surety acts in good faith if it has a proper (non-fraudulent and non-collusive) motive in paying a claim, while others require also that it acts reasonably in paying claims. *See id.* (collecting cases).  In any event, the production of prima facie evidence "shifts to [an indemnitor] the burden of proving that the [amounts] claimed are excessive." *See Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997).  To do so, the indemnitor must provide "more than mere

---

[2] No party argues that another jurisdiction's law applies, and Plaintiff cites cases applying District of Columbia law, *see* ECF No. 64 at 3–5, so the Court assumes that District of Columbia law governs. *E.g.*, *Feld v. Fireman's Fund Ins. Co.*, 292 F.R.D. 129, 137 n.6 (D.D.C. 2013).

unsupported allegations or denials"—"evidence that would refute plaintiff's right to indemnification under the [contract]." *See Greenwich Ins. Co. v. ICE Contractors, Inc.*, 541 F. Supp. 2d 327, 331, 332 (D.D.C. 2008).

## III.   Analysis

Plaintiff's evidence shows that it suffered $3,656,361.37 in losses and expenses under bonds it issued on Defendants' behalf. Still, it seeks to recover only the losses (not the expenses) that constitute that amount: $3,554,323.00. Plaintiff met its contractual burden to establish that amount, which shifts the burden to Defendants to dispute it. None has met that burden. So the Court will enter a $3,554,323.00 judgment for Plaintiff against Defendants, jointly and severally.

### A.   Findings of Fact

On consideration of Plaintiff's operative complaint, ECF No. 48, and accompanying exhibits, *id.* at 25–81, the exhibits Plaintiff attached to its memoranda supporting its damages calculation, ECF Nos. 64-1, 64-2, 68-2, 68-3, Plaintiff's memoranda, ECF Nos. 64, 65, 68 and Reza Amirghaffari's opposition, ECF No. 68-1 at 2, the Court finds the following:

Plaintiff Guarantee Company of North America USA ("Guarantee Co.") is a surety authorized to operate in the District of Columbia. ECF No. 48 at 1–23 ("Compl.") ¶ 1. Defendant Lakota Contracting Inc. ("Lakota") is a corporation that does interior-finish-and-flooring construction work as a subcontractor. Compl. ¶¶ 2, 9–10. Defendant National Commercial Flooring, Inc. ("NCF") is a corporation that shares common ownership with Lakota. *See* Compl. ¶3; ECF No. 48 at 30–32. Defendant JRH Avion Park, LLC ("JRH") is a limited liability company that shares common ownership with Lakota. *See* ECF No. 48 at 1, 30–32. Defendant Reza Amirghaffari is an individual and the managing member of JRH. *Id.* at 31. Defendant Roya Amirghaffari is an individual and the president of Lakota and NCF. *Id.* at 30.

Defendants incurred contractual obligations to provide performance and payment bonds for construction projects on which they worked. *See* Compl. ¶¶ 11–12. They retained Guarantee Co. to provide performance and payment bonds on their behalf for at least four projects, which the Court will call the Van Street Project, the Ripley East Project, the Tysons Central Project, and the Suburban Hospital Campus Project. *See* Compl. ¶ 12. In exchange, Defendants agreed, "jointly and severally," to indemnify Guarantee Co. for, among other things, payments Guarantee Co. made on claims against those bonds. ECF No. 48 at 25–26. That indemnity agreement included the following provision:

> In the event of any payment of any kind by [Guarantee Co.], [Defendants] . . . agree that [their liability] shall extend to and include, and [Guarantee Co.] shall be entitled to charge and recover for, any and all disbursements made by it in good faith under the belief that:
> a. [a defendant] is or has been in default under or pursuant to this Agreement;
> b. [Guarantee Co.] was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or
> c. such payments were or are necessary or expedient, in [Guarantee Co.'s] sole and absolute discretion, to protect any of [its] rights or interests or to avoid or lessen [its] liability or alleged liability, whether or not such liability, necessity or expediency actually existed.

The indemnity agreement also included the following provision:

> An itemized statement of loss and expense incurred by [Guarantee Co.], sworn to by an officer of [Guarantee Co.], shall be prima facie evidence of the fact and extent of the liability of [Defendants] to [Guarantee Co.] in any claim or suit by [Guarantee Co.] against [Defendants].

Guarantee Co. issued performance and payment bonds on Lakota's behalf for the Van Street Project. ECF No. 64-1 at 8. It paid an obligee of the Van Street performance bond $342,800.00. *Id.* at 16. And it incurred an additional $102,038.37 in expenses related to the Van Street bonds. *Id.*; ECF No. 65.

Guarantee Co. issued performance and payment bonds on Lakota's behalf for the Ripley East Project. ECF No. 64-1 at 8. It paid an obligee of a Ripley East performance bond $700,000.00. *Id.* at 16. And it paid obligees of Ripley East payment bonds $514,538.32. *Id.*

Guarantee Co. issued performance and payment bonds on Lakota's behalf for the Tysons Central Project. *See* ECF No. 48 at 81. It paid an obligee of the Tysons Central performance bond $710,000.00. ECF No. 64-1 at 17. And it paid an obligee of the Tysons Central payment bond $10,319.66. *Id.*

Guarantee Co. also issued performance and payment bonds on Lakota's behalf for the Suburban Hospital Campus Project. *See* ECF No. 48 at 81. It paid an obligee of the Suburban Hospital Campus performance bond $800,000.00. ECF No. 64-1 at 16. And it paid obligees of the Suburban Hospital Campus payment bond $476,665.02. *Id.* at 16–17.

In total, Guarantee Co. paid $3,554,323.00 on those bonds and incurred $102,038.37 in expenses. *See* ECF No. 64-1 at 16–17; ECF No. 65.

Before paying claims on bonds it issued, Guarantee Co. requested documentation to support the claims, gave Defendants a chance to dispute the claims, consulted a construction expert to investigate the claims' reasonableness, reviewed materials submitted in support of the claims and, if applicable, objections to the claims. ECF No. 64-1 at 3–4. In addition, before paying claims on bonds it issued, Guarantee Co. ensured that outstanding balances claimants owed to Defendants were offset against the amount claimed. ECF No. 68-3 at 2.

**B.     Conclusions of Law**

Two officers of Guarantee Co., Sara Corbello and Jeffrey Jubera, have sworn to an itemized statement of loss and expense incurred by Guarantee Co. under bonds it issued on Defendants' behalf. *See* ECF No. 64-1 at 1, 5, 7, 14, 16–17; ECF No. 64-2 at 1–3; ECF No. 68-3 at 2–3. Under the indemnity agreement Defendants signed, those affidavits and their supporting proof are, at

least, "prima facie evidence of the fact and extent of the liability of [Defendants]." ECF No. 48 at 26. That clause is enforceable under District of Columbia law. *Selective Ins. Co.*, 2021 WL 3268380, at *6. Thus, to avoid judgment in that amount, Defendants had to produce affirmative contrary evidence. *See Ideal Elec. Sec. Co.*, 129 F.3d at 151; *Greenwich Ins. Co.*, 541 F. Supp. 2d at 331–32.

Defendants have not done so. Reza Amirghaffari, the only one who even tried, merely advanced attacks on Guarantee Co.'s evidence, rather than presenting affirmative evidence of his own. *See* ECF No. 68-1 at 2. Still, the Court will explain why those attacks are misplaced.

First, Reza Amirghaffari asserts that Guarantee Co. did not provide enough detail about the payments it made under the bonds to prove the amounts it paid "were actually owed by Lakota." ECF No. 68-1 at 2. But the parties' indemnity agreement subjects Defendants to liability even for amounts that Guarantee Co. believed in good faith that it "might be liable to pay" or were otherwise "necessary or expedient" to pay to "protect any of [its] rights or interests," "whether or not such liability, necessity or expediency actually existed." ECF No. 48 at 26. As the Court's findings of fact reflect, Guarantee Co. provided ample evidence that it received claims under bonds it issued, investigated those claims, and determined that the best course was to pay the claims. Under the parties' indemnity agreement, that is enough. The Court need not determine whether Lakota defaulted on the contracts.

Second, Reza Amirghaffari says Guarantee Co. did not provide an accounting showing that it offset amounts owed by bond obligees to Lakota before paying obligees under the bonds. ECF No. 68-1 at 2. Regardless, Guarantee Co. *has* provided evidence that it performed those calculations. ECF No. 68-3 at 2. And again, under the parties' indemnity agreement, there is no reason Guarantee Co. had to produce every detail of its accounting of claims under the bonds.

Third, Reza Amirghaffari argues that Guarantee Co. has not supported its claims to attorney's fees. ECF No. 68-1 at 2. That argument is irrelevant because Guarantee Co. is not seeking reimbursement for any expenses, including attorney's fees. ECF No. 64-1 at 5 (noting that Guarantee Co. "has determined not to seek recovery for" "attorneys' fees, consultant fees and other loss adjustment expenses such as . . . travel and lodging expenses, delivery expenses, [and] postage and express delivery expenses"). That is why, despite having provided evidence that it paid $3,656,361.37 attributable to the relevant bonds, *see id.* at 17, Guarantee Co. seeks only $3,554,323.00, ECF No. 64 at 5. The difference is $102,038.37 in expenses, including attorney's fees, that Guarantee Co. does not seek to recover. *See* ECF No. 65.

Thus, no Defendant has "produced any evidence that would refute [Guarantee Co.'s] right to indemnification under the terms of the [a]greement." *Greenwich Ins. Co.*, 541 F. Supp. 2d at 332. Given that lack of evidence, the Court has no basis to conclude that Guarantee Co. acted unreasonably—the "less favorable standard to sureties." *See Selective Ins. Co.*, 2021 WL 3268380, at *9. Thus, it is unnecessary to decide which standard—unreasonableness or proper motive—applies here. Guarantee Co. has established its entitlement to the amount it seeks under either standard.

**IV.   Conclusion**

For all the above reasons, the Court will enter a $3,554,323.00 final judgment for Plaintiff against Defendants, jointly and severally. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 14, 2023